## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| INNOVATIVE SPINAL | : | Case No. 09-14415 (FJB) |
| TECHNOLOGIES, INC., | : | |
| | : | |
| Debtor. | : | |
| | : | |

### TRUSTEE'S MOTION FOR (I) AN ORDER (A) APPROVING BIDDING PROCEDURES IN CONNECTION WITH SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (B) APPROVING THE EXPENSE REIMBURSEMENT, (C) SCHEDULING AN AUCTION AND HEARING TO APPROVE THE SALE AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF, AND (D) ESTABLISHING PROCEDURES RELATING TO THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS; AND (II) AN ORDER (A) APPROVING THE PROPOSED SALE, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS, AND (C) GRANTING <u>CERTAIN RELATED RELIEF</u>

Warren E. Agin, the duly-appointed chapter 7 trustee (the "Trustee") of Innovative Spinal

Technologies, Inc. (the "Debtor"), hereby applies for entry of various orders pursuant to sections

105, 363, and 365 of the United States Bankruptcy Code (the "Bankruptcy Code") and Rules

2002, 6004, and 6006 of the Federal Rules of Bankrupty Procedure (each a "Bankruptcy Rule,"

and collectively, the "Bankruptcy Rules") for entry of (I) an order (a) approving the bidding

procedures in connection with the sale of substantially all of the Debtor's assets (the "Bidding

Procedures"), including authorization to sell the Debtor's assets free and clear of liens, claims,

interests and encumbrances, (b) approving the expense reimbursement, (c) scheduling an auction

and hearing to approve the proposed sale and approving the form and manner of notice thereof,

and (d) establishing procedures relating to the assumption and assignment of executory contracts;

and (II) an order (a) approving the proposed sale, (b) authorizing the assumption and assignment

of certain executory contracts, and (c) granting certain related relief (the "Motion"). In support

of this Motion, the Trustee respectfully represents as follows:

## I.      JURISDICTION

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N) and (0).  Venue

of this case and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The Statutory predicates for the relief requested herein are sections 105(a),

363(b), 363(f), 365, 503 and 507 of the Bankruptcy Code, and Bankruptcy Rules 2002(a)(2),

6003, 6004, 6006(a), 9007 and 9014.

## II.     BACKGROUND

3.      On May 15, 2009 (the "Petition Date"), the Debtor filed its voluntary petition for

relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") in the

United States Bankruptcy Court for the District of Massachusetts.

4.      The Trustee is the duly appointed Chapter 7 Trustee in the Debtor's bankruptcy

case.

5.      Before the Petition Date, Debtor, a Delaware corporation, was a spine technology

company, headquartered in Mansfield, Massachusetts, which developed motion preservation and

minimally invasive treatments for spinal disorders.  The Debtor was committed to advancing

patient care by developing innovative motion preservation and minimally invasive spinal

products.

6.      The Debtor's business strategy was focused on the two fastest growing areas in

the multibillion dollar spine market: minimally invasive fusion and motion preservation.

Debtor's primary products include:

{K0402846.1}

(a) PARAMOUNT® Open Pedicle Screw System for single- and multi-level procedures; and PARAMOUNT® Open Pedicle Screw System, which is designed to meet the needs of minimally invasive lumbar fusion;

(b) PARAMOUNT® Interbody Fusion System (IBF), designed for a transformational approach to interbody fusion with placement control and maneuverability; and

PARAMOUNT® VBR, which is designed for a minimally invasive transformational approach;

(c) The CORDANT anterior cervical plate (ACP), which offers a simpler, less invasive solution to cervical fusion, limiting exposure and optimizing graft visibility; and

(d) AXIENT™ SC Dynamic Fixation system, a semi-constrained posterior pedicle screw-based motion system, including the in-development AXIENT™ TOTAL.

7.      The Debtor was founded in 2002 as an incubator at the Texas Back Institute under the name MusculoSkeletal Research Corporation.

8.      In 2003, the Debtor raised a $6.2 million Series A funding round that included investments from various medical device companies.  Thereafter, the corporation was renamed Innovative Spinal Technologies, Inc.  Later in 2003, Debtor raised $39 million in a Series B funding round with MPM Capital, Orbimed Advisors, and Panorama Capital.

9.      Debtor moved its operations from Texas to Mansfield, Massachusetts in 2005.  As of the Petition Date, Debtor remained a tenant under a lease for space located at 111 Forbes Boulevard, Mansfield, Massachusetts.

10.      In 2008, Debtor raised an additional $18 million in a Series C funding round.

### III.      PRIOR RELIEF OBTAINED

11.      On June 17, 2009 the Trustee filed a Motion authorizing him to sell at public auction certain assets of the Debtor locate at the Debtor's former premises in Marshfield, Massachusetts (the "Premises").  In connection with such sale, the Trustee also sought approval

of that certain Stipulation for Auction of Estate Assets, Distribution of Auction Proceeds and Borrowing of Money to Conduct Sale (the "Oxford Stipulation").

12. On June 17, 2009 the Trustee filed a motion seeking an order approving the "Stipulation Concerning Use of Cash Collateral and Adequate Protection and Agreement for Liquidation of Certain Assets and Distribution of Sale Proceeds" (the "Carve-Out Stipulation").

13. On June 23, 2009, the Court Granted the requested relief requested in the Oxford Stipulation and the Carve-Out Stipulation.

14. In compliance with the terms of the Oxford Stipulation, Cowan Alexander, the Trustee's auctioneer, held an on-line auction where certain of the Debtor's assets located at the Premises were sold for the benefit of the Debtor's estate. Generally, these assets consisted of equipment subject to liens of Oxford Financial Corporation.

15. On July 5, 2009 the Premises were returned to the Landlord.

16. The Oxford Stipulation and the Carve-Out Stipulation also provide that the Trustee would seek authority from the Court, by separate motion, to sell other assets not located at the Premises, including, without limitation, intellectual property and certain inventory located at third-party locations.

17. Accordingly, the Trustee now brings this Motion for approval of the Bidding Procedures and for authorization to sell the Debtor's remaining assets.

## IV.   RELIEF REQUESTED

18. By this Motion, the Trustee seeks entry of an order (a) approving the Bidding Procedures (attached as Exhibit B) in connection with the sale of substantially all of the Debtor's assets subject to higher or better offers, (b) approving an expense reimbursement for the Proposed Purchaser (defined below), (c) scheduling an auction and Sale Hearing (defined

below), subject to the Court's calendar and availability, for a date from Monday, August 24 to Wednesday, August 26, inclusive, to approve the transaction and approving the form and manner of notice thereof, and (d) establishing procedures relating to the assumption and assignment of executory contracts (such order is referred to as the "Bid Procedures Order").  In addition, the Trustee also seeks, at the conclusion of the Sale Hearing, entry of an order (a) authorizing the sale of substantially all of the Debtor's assets to Integra LifeSciences Corporation ("Integra" or the "Proposed Purchaser"), in accordance with the terms of an Asset Purchase Agreement (the "APA") in the form attached hereto as **Exhibit A**, or such other person(s) or entit(ies) who is (are) the Final Bidder, (b) authorizing the assumption and assignment of certain executory contracts, and (c) granting certain related relief (such order is referred to as the "Sale Order").

## V.     HISTORY OF DEBTOR'S SALE PROCESS

### A.     Pre-Petition

19.     During 2008, the Debtor sought acquisition partners and prepared a substantial due diligence "dataroom" website to facilitate the acquisition process.

20.     As late as March 2009, the Debtor was furthering its negotiations with two medical devices corporations in connection with APA pursuant to which Debtor's business would have been purchased largely as a going concern.

21.     Despite its attempt to conclude a sale outside of bankruptcy, on May 15, 2009 the Debtor commenced this case without having a sale completed.

### B.     Post-Petition

22.     On June 17, 2009, the Trustee sent initial notice letters to approximately ninety (90) sale prospects consisting of pre-targeted industry members.  The initial notice letters included a summary of the product lines available for sale, forms of nondisclosure agreements,

and information on how to obtain additional information about the assets available for sale. On June 17, 2009, the Trustee also issued a press-release targeted at online news aggregators about the pending sale.

23.   On June 25, 2009, the Trustee issued an additional press release to provide further notice regarding the availability of the Debtor's assets for sale. This press release indicated that the Trustee would solicit purchase offers through July 6, 2009, with a cash-only closing expected in August 2009.

24.   Even before the second press release, the Trustee had received numerous expressions of interest from viable buyer prospects in the medical devices industry. Each interested party that contacted the Trustee was asked to sign and return a non-disclosure agreement. The Trustee has sent out more than 110 non-disclosure agreements to interested parties. Parties returning the confidentiality agreements received a due diligence disk with detailed information about the assets available for sale, and a notice that the Trustee was soliciting purchase offers through July 6, 2009. Thirty-five companies received due diligence packages under confidentiality agreements.

### *TRUSTEE RECEIVES OFFERS TO PURCHASE AND BIDS FOR ASSETS*

25.   By the evening of July 6, 2009, the date upon which the Trustee had requested delivery of all expressions of interest, the Trustee had received numerous bids of both the "all-assets" variety and bids regarding particular asset "lots".

26.   With respect to the all-asset bids, there were three, all substantially in excess of $1,000,000.

27.   Regarding bids for particular assets, prospective purchasers were primarily interested in the Paramount Open/MIS systems. All bids for just the Paramount Open/MIS

Systems were substantially in excess of $100,000 and several bids for individual assets exceeded $1,000,000.

## VI.    PROPOSED SALE AND PROPOSED PURCHASER

28.    The assets to be sold consist of substantially all of the Debtor's assets.

29.    Under the terms of the APA, the Proposed Purchaser will purchase, subject to solicitation of higher and better offers and entry of an order of this Court approving the transaction assets of the Debtor, identified in the APA.  The Proposed Purchaser will also assume certain executory contracts (collectively the "Acquired Assets").  The assets that are to be excluded from the sale are set forth on Schedule 1.8 (Excluded Assets) to the APA.

30.    In consideration of the acquisition of the Acquired Assets, the Proposed Purchaser has offered to pay cash consideration of $5,000,000.

31.    The Proposed Purchaser, a fully integrated medical device company with thousands of products for different medical specialties, is a Delaware corporation with a principal place of business in Plainsboro, New Jersey.

## VII.    BASIS FOR RELIEF

### A.    Approval of Bidding Procedures

32.    The Motion seeks, among other things, approval of the Bidding Procedures to be used in connection with soliciting higher and better offers for the sale of all or substantially all of the Debtor's assets, to establish procedures for the assumption and assignment of executory contracts and to approve certain protections for the Proposed Purchaser.

33.    The Bidding Procedures are designed to maximize value for the Debtor's estate and its creditors and afford the maximum possible return to creditors.  The Bidding Procedures

are the result of negotiations between the Trustee and the Proposed Purchaser and are attached

hereto as **Exhibit B**.

34.   Set forth below is a summary of the operative terms found in the Bidding

Procedures; if there is any inconsistency or other difference between the summary below and the

Bidding Procedures the Bidding Procedures control.

- Assets to be Sold:  The Trustee shall offer for sale all assets (the "Asset Sale") of the Debtor's Business including those assets specifically identified in the Asset Purchase Agreement (collectively, the "Assets").

- Participation Requirements:  Any person desiring to participate in the bidding process (each, a "Potential Bidder") must become a "Qualifying Bidder." As a prerequisite to becoming a Qualifying Bidder, a Potential Bidder:

  a. must deliver an executed confidentiality agreement in form and substance acceptable to the Trustee; and

  b. must be able, as determined by the Trustee, after consultation with counsel for Silicon Valley Bank and GE Business Financial Services Inc., f/k/a Merrill Lynch Business Financial Services, Inc. (collectively, the "Lenders"), to consummate a transaction based upon the Asset Sale, by demonstrating the ability to pay the entire amount owed to the Trustee in cash within 48 hours of demand by the Trustee, if selected as the successful bidder.

  c. The Proposed Purchaser is deemed a Qualifying Bidder and the Asset Purchase Agreement constitutes a Qualifying Bid (as defined below) for all purposes.

- Due Diligence:  A Qualifying Bidder will have the opportunity to conduct reasonable due diligence through and including the Bid Deadline (as defined below).  The Trustee shall not be obligated to furnish any due diligence information after the Bid Deadline (as defined below).

- Bid Requirements:  To be deemed a "Qualifying Bid," a bid must be received from a Qualifying Bidder by a date no later than the Bid Deadline (as defined below) that, among other requirements:

  a. states such Qualifying Bidder offers to purchase (i) all or substantially all of the Assets or (ii) one of the subsets of the Assets identified on the attached Schedule A (each, a "Lot"), in either case all upon the terms and conditions substantially as set forth in the Asset Purchase Agreement;

b. is accompanied by a clean and duly executed purchase agreement (each, a "Modified Asset Purchase Agreement") and a marked Modified Asset Purchase Agreement reflecting any variations from the Asset Purchase Agreement executed by the Proposed Purchaser (including clearly defining, with specificity, any applicable subset of the Assets);

c. identifies with particularity each and every executory contract the assumption and, as applicable, assignment of which is a condition to Closing;

d. does not request or entitle such Qualifying Bidder to any break-up fee, expense reimbursement, or similar type of payment;

e. If a Lot Bid, then is not less than the "Minimum Lot Bid" identified for each Lot on the attached Schedule A;

f. If an All Asset Bid, then is not less than the aggregate of the value of the sum of: $5,350,000, which is calculated for purposes of these Bidding Procedures as (i) the Purchase Price plus (ii) the amount of the Expense Reimbursement; plus (iii) $100,000 ("Bidding Threshold"); and

g. provides a purchase deposit equal to five percent (5%) of the purchase price contained in the Modified Asset Purchase Agreement in immediately available funds.

- A competing bid satisfying the above requirements (all requirements are fully provided for in the Bidding Procedures which are attached as **Exhibit B**), in the Trustee's reasonable judgment shall constitute a Qualifying Bid.

- Bid Deadline:  A Qualifying Bidder desiring to bid shall deliver a written or electronic copy of its bid so as to be received by a date no later than 4:00 p.m. on August 14, 2009 (the "Bid Deadline").

- Evaluation of Qualifying Bids:  The Trustee shall make a determination regarding whether a bid is a Qualifying Bid and shall notify bidders whether their bids have been determined to be qualified by a date no later than two (2) days prior to the Auction Date (as defined below).  Prior to the Auction (as defined below), the Trustee shall determine, in his reasonable judgment after consultation with Lenders' counsel, which of the Qualifying Bids is likely to be the highest or best for purposes of designating such bids as the Auction's (as defined below) starting bids for (i) all or substantially all of the Assets and (ii) one or more Lots (each, a "Starting Bid").

- Auction:  In the event that the Trustee timely receives one or more Qualifying Bids other than the Asset Purchase Agreement, or if the sum of the Starting Bids exceeds the Bidding Threshold, then the Trustee shall conduct a sealed bid auction at the Bankruptcy Court (the "Auction") on at [10:00] a.m. on August __, 2009 (the "Auction Date").

- <u>Auction Procedures</u>: The Auction shall be governed by the following procedures:

  a. only the Proposed Purchaser, the other Qualifying Bidders and the Lenders (pursuant to 11 U.S.C. Section 363(k) and the Court approved Carve-Out Stipulation) shall be entitled to bid at the Auction;

  b. Qualifying Bidders submitting a Qualifying Bid for one or more Lots shall only be permitted to bid on the particular Lot or Lots identified by such Qualifying Bidder in its Qualifying Bid.   The Proposed Purchaser and any other Qualified All Asset Bidder shall be free to submit one or more Bids on any and/or all Lots or All-Assets as provided in these Bidding Procedures;

  c. with respect to the Auction for a Lot the Auction for the individual Lots shall occur before any auction for all of the Assets, and

     - bidding for each Lot shall commence with the applicable Starting Bid identified by the Trustee (which the Trustee shall disclose to all Qualifying Bidders);

     - any Qualifying Bidders participating in the Lot Auction shall submit a sealed bid with respect to the applicable Lot that (i) exceeds the applicable Starting Bid by an amount no less than an increment to be determined by the Trustee at the Auction and (ii) may make modifications to the Asset Purchase Agreement subject to this Section 8 (each, a "<u>Modified Asset Purchase Agreement</u>"); and

     - The Trustee shall determine, subject to Bankruptcy Court approval, which bid for each Lot constitutes the highest or best from among the bids submitted at the Auction with respect to each such Lot (each a "<u>Highest Lot Bid</u>" and, collectively, the "<u>Highest Lot Bids</u>"), and shall disclose to the Qualified Bidders for all of the Assets, at a minimum, (i) the number of Lot Bids received and the aggregate amount of the Highest Lot Bids, and (ii) the identity of the party submitting each Highest Lot Bid and the amount of each Highest Lot Bid prior to any bidding on substantially all of the Assets.  If as a result of the Auction the sum of all of the Highest Lot Bids exceeds the amount of the Highest All Asset Bid (as defined below), then the Trustee (i) shall advise the Qualified Bidders of such, and (ii) the Trustee shall sell the Assets in Lots.   In such event, the Trustee shall reopen the Lot Bidding for an additional sealed bid on the relevant Lots. The Proposed Purchaser shall be provided the opportunity to participate in the bids for the Lots.  The highest and best offer shall be accepted by the Trustee with respect to such Lot or Lots ("<u>Prevailing Lot Bid</u>").

  d. with respect to the Auction for all or substantially all of the Assets (such Auction, the "<u>All-Asset Auction</u>" and any bid submitted in such All-Asset Auction, an "<u>All-Asset Bid</u>"),

- bidding shall commence with a number determined by the Starting Bid identified by the Trustee, or a combination of the Highest Lot Bids as identified by the Trustee;

- Only bidders who submit a Qualifying All Asset Bid shall be permitted to bid at the All-Asset Auction. Any Qualifying Bidder other than the Proposed Purchaser participating in the All-Asset Auction shall submit a sealed bid in an increment of at least $350,000 higher than the Starting Bid, which bid shall include any Modified Asset Purchase Agreement;

- if there are three (3) or more Qualifying Bidders in the All-Asset Auction, then the two (2) Qualifying Bidders which, in the Trustee's discretion after consultation with Lenders' counsel, have submitted the two (2) highest or best bids (determined, among other things, with reference to the requirements of paragraph 8 (f) below) shall have the right to submit one (1) additional bid proposing additional desired modifications to the Asset Purchase Agreement or Modified Asset Purchase Agreement; and

- The Trustee shall determine, subject to Bankruptcy Court approval, and accounting for the Auction Threshold (as defined below), which bid constitutes the highest or best from among the bids submitted at the Auction (the "Highest All Asset Bid").

- If the sum of all of the Highest Lot Bids does not exceed the Highest All-Asset Bid, then the Trustee shall either accept the Integra All-Asset Bid or, if the All-Asset Bid of a different entity exceeds the Integra All-Asset Bid (after accounting for the Auction Threshold, as defined below), then such other bid of such different entity ("Prevailing All Asset Bid").

e. the bidder(s) which have submitted the highest or best of (i) the aggregate Prevailing Lot Bids and (ii) the Prevailing All Asset Bid (all in accordance with these Bid Procedures) shall become the "Final Bidder(s)" (and the applicable bid, the "Final Bid") and shall have such rights and responsibilities of the Buyer as set forth in the applicable Asset Purchase Agreement or Modified Asset Purchase Agreement. In determining the highest and best Final Bid, in the event the Trustee does not identify the Proposed Purchaser as the Final Bidder or one of the Final Bidders, then the Final Bid must provide economic value to the estate in an amount greater than the "Auction Threshold" which is the greater of (a) the sum of the Proposed Purchaser's Highest All-Asset Bid, the Expense Reimbursement and $25,000, and (b) the sum of the Proposed Purchaser's highest Lot Bid(s) and the prevailing Lot Bids for Lot(s) for which the Proposed Purchaser did not bid, the Expense Reimbursement plus $25,000;

- Sale Hearing: The Final Bidder(s) (or the Asset Purchase Agreement if no Qualifying Bid other than that of the Proposed Purchaser is received) will be subject to approval by the Bankruptcy Court. The hearing to approve the sale to

the Final Bidder(s) (or the Asset Purchase Agreement if no Qualifying Bid other than that of the Proposed Purchaser is received) (the "Sale Hearing") shall take place on August _____, 2009.

35.    Only a competing bid satisfying all of the requirements provided for in **Exhibit B** shall constitute a Qualifying Bid.

36.    The Final Bid (as defined in the Bidding Procedures) will be subject to approval by this Court.  At the hearing to approve the Final Bid (the "Sale Hearing") the Trustee will seek the entry of an order of this Court approving and authorizing the Asset Sale to the Proposed Purchaser or to the Final Bidder(s) submitting the highest and best offer(s) at the Auction, as applicable, on terms and conditions consistent with the APA, as may be amended and modified.

**B.    Approval of Notice Procedures**

37.    Not later than two (2) business days after entry of the Bid Procedures Order, the Trustee will serve a copy of the *Notice of Intended Auction of Debtor's Assets, Deadline for Submitting Objections and Higher Offers and Sale Hearing Date*, substantially in the form attached hereto as **Exhibit C** (the "Sale Notice"), as well as a copy of this Motion and the Bid Procedures Order by first-class mail postage prepaid upon (i) counsel to all parties holding liens in the Acquired Assets; (ii) the United States Trustee for the District of Massachusetts; (iii) the Internal Revenue Service; (iv) the Massachusetts Department of Revenue; (v) the counterparties to each of the Assumed and Assigned Contracts; (vi) all parties that have requested special notice pursuant to Bankruptcy Rule 2002; (vii) the top twenty unsecured creditors; and (viii) all other entities known to have expressed an interest in a transaction with respect to all or part of the Acquired Assets.

**C.    Approval of Procedures for Assumption and Assignment of Executory Contracts**

38.    To facilitate and effect an Asset Sale, the Trustee will be required to assume and

assign to the Prevailing Bidder certain executory contracts of the Debtor (the "Assumed and

Assigned Contracts").  No later than twenty (20) days prior to the Sale Hearing, the Trustee

shall cause notice to be provided to all counterparties to the executory contracts that may be the

Assumed and Assigned Contracts, substantially in the form attached hereto as **Exhibit D**

(the "Cure Notice").  The Cure Notice shall provide the counterparties to the possible Assumed

and Assigned Contracts notice of the amount that the Trustee believes must be cured upon the

assumption and assignment as required under section 365 of the Bankruptcy Code (the "Cure

Amount").

39.     Under the APA, the Trustee is responsible for payment of all Cure Amounts.

The Trustee proposes the following cure procedures (the "Cure Procedures") for the

identification and payment of Cure Amounts:  Except as may otherwise be agreed to by the

parties to an Assumed and Assigned Contract, on the Effective Date, the Trustee shall cure those

defaults under the Assumed and Assigned Contracts that need to be cured in accordance with

section 365(b) of the Bankruptcy Code by (a) payment of the undisputed Cure Amounts, and/or

(b) reserving amounts with respect to the disputed Cure Amounts.  In the event of a dispute

regarding the Cure Amount, any payments required, following entry of a Final Order resolving

such dispute, shall be made as soon as practicable thereafter.  If no objection is timely received,

the Cure Amount set forth in the Cure Notice shall be controlling notwithstanding anything to

the contrary in any Assumed Contract or other documents as of the date of the Cure Notice.

40.     Objections, if any, to the proposed assumption and assignment of the Assumed

and Assigned Contracts, including, but not limited to, objections relating to the Cure Amount

and/or adequate assurances of future performance must be filed by the date set by the Court

prior to the Sale Hearing (the "Objection Deadline").  In the event an objection is not resolved,

this Court will determine related disputed issues, including any adequate assurance of future performance issues.

**D.**    **Approval of Buyer Protections**

41.    To induce the Proposed Purchaser to expend the time, energy and resources necessary to submit a stalking horse bid, the Trustee has agreed to provide the Proposed Purchaser, and seek this Court's approval of, certain bid protections to the Proposed Purchaser pursuant to the terms of the APA, pursuant to, inter alia, MLBR 6004-1(a)(1)(B)(ii).  As set more specifically below, the Trustee has agreed to provide the Proposed Purchaser with a right to expense reimbursement of $250,000 to reimburse the Proposed Purchaser for out-of-pocket expenses in connection with the sale transaction.

42.    By this Motion, the Trustee seeks authorization to pay the Proposed Purchaser expense reimbursement (the "Expense Reimbursement") in the amount of $250,000 if the Trustee accepts an alternative transaction for the sale of all or substantially all of the assets of the Debtor to any party or parties other than the Proposed Purchaser.  The sale proceeds will exclusively provide the funds for the payoff of the Expense Reimbursement.

43.    The Expense Reimbursement (amounting to five percent (5%) of the proposed cash component of the purchase price), has been calculated as an estimate of the amount necessary to reimburse the Proposed Purchaser for its reasonable out-of-pocket costs and expenses (including legal fees and expenses) incurred in connection with the formation, negotiation and documentation of the APA and to fund reasonable expenses the Proposed Purchaser incurs with respect to participation in the sale process. The amount has been established through this estimation process, rather than left for determination, in order to afford potential bidders the certainty of a fixed minimum overbid requirement, and capped so as not to

chill the submission of such overbids.

44.     It is understood by the Trustee, that in entering into the APA, the Proposed Purchaser has provided a material benefit to the Debtor's estate and its creditors by increasing the likelihood that the best possible price for the Debtor's assets will be received. The Expense Reimbursement induced the Proposed Purchaser to submit a bid that will serve as a minimum floor bid on which the Trustee, the Debtor's creditors and other bidders may rely. Accordingly, the Trustee represents that the Expense Reimbursement is reasonable and appropriate and represents the best method for maximizing value for the benefit of the Debtor's estate.

## VIII.   THE COURT SHOULD APPROVE THE BIDDING PROCEDURES AND THE SALE

45.     The Trustee believes that the foregoing Bidding Procedures provide an appropriate framework for selling the Debtor's Assets and will enable the Trustee to review, analyze and compare all bids received to determine which bid or bids are in the best interest of the Debtor's estates and creditors. Moreover, for the reasons discussed below, the Trustee believes the Bidding Procedures, including the Expense Reimbursement, are fair and reasonable under the circumstances. Therefore, the Trustee respectfully requests that this Court approve the Bidding Procedures in full.

## A.     The Bidding Procedures Are an Appropriate Means of Maximizing Value

46.     The Bidding Procedures proposed herein are designed to maximize the value received for the Debtor's Assets by facilitating a competitive bidding process in which all Potential Bidders are encouraged to participate and submit competing bids.

47.     After notice and a hearing, a trustee may sell the debtor's assets. 11 U.S.C. § 363. In order to obtain approval of a proposed sale of assets, a Trustee usually must show

that the proposed purchase price is the highest and best offer available under the circumstances of the case. See, e.g., Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.), 107 F.3d 558, 564-65 (8th Cir. 1997) (holding that in bankruptcy sales, "a primary object of the code [is] to enhance the value of the estate at hand"); In re Integrated Res., Inc., 147 B.R. 650, 659 (S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the . . . . Debtors' duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting Cello Bag Co. v. Champion Intl Corn (In re Atlanta Packaging Prods., Inc.), 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988)).

48.     Bankruptcy courts frequently approve competitive bidding procedures as a means of ensuring that such sales will generate the highest and best returns to the debtor. See, e.g., Doehring v. Crown Corp. (In re Crown Corp.), 679 F.2d 774, 775 (9th Cir. 1982) (district court required specific minimum overbid amounts, deposits, and comparable deal terms to be used by all overbidders); In re Crowthers McCall Pattern, Inc., 114 B.R. 877, 879 (Bankr. S.D.N.Y. 1990) (court entered order requiring that overbids be made in specified minimum increments with deposits); In re Financial News Network, Inc., 931 F.2d 217 (2d Cir. 1991) (requiring that overbids exceed the initial offer by 9.5 percent).

49.     It is the Trustee's good faith and honest judgment that the Expense Reimbursement is reasonable under the circumstances. See, e.g., In re 995 Fifth Ave. Assocs., L.P., 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (bidding incentives may "be legitimately necessary to convince a 'white knight' to enter the bidding by providing some form of compensation for the risks it is undertaking"); In re Marrose Corp., Nos. 1992 WL 33848, at *5 (Bankr. S.D.N.Y. Feb. 15, 1992) (approving of "agreements to provide

{K0402846.1}

breakup fees or reimbursement of fees and expenses meant to compensate the potential

acquirer who serves as a catalyst or 'stalking horse' which attracts more favorable offers").

50.     The Trustee submits that sufficient cause exists to approve the proposed

Bidding Procedures, Expense Reimbursement, and other bid protections. The Proposed

Purchaser was understandably not willing to commit to hold open its offer to purchase the

Assets under the terms of the APA without the bid protections, including the Expense

Reimbursement. The Proposed Purchaser will have expended, and likely will continue to

expend, considerable time, money and energy pursuing the sale and will have engaged in

extended and lengthy, good faith negotiations. Further, the Proposed Purchaser's efforts have

increased the chances that the Trustee will receive the highest and best offer for the Debtor's

Assets by establishing a bid standard or minimum for other bidders to the Auction and by

serving as a catalyst for other potential or actual bidders, to the benefit of the estates, creditors,

and all other parties in interest.

51.     The Bidding Procedures provide the Trustee with the opportunity to

consider all competing offers and to select the highest or best offer. Entering into the APA

with the Proposed Purchaser insures fair value by setting a minimum purchase price and

testing the price in the marketplace. Accordingly, the Trustee and all parties in interest can be

assured that the consideration paid for the Debtor's Assets will be fair, reasonable, and in the

best interest of the Debtor's estate and creditors, and there are sound business reasons to

approve the Bidding Procedures.

52.     The Trustee thus requests that the Court approve the bid protections included in

the Bidding Procedures and payment of the Expense Reimbursement.

**B.      The Assumption, Assignment and Cure Procedures Provide Adequate Notice and
         Opportunity to Object and Should be Approved**

53.     Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a trustee "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the Debtor." 11 U.S.C. § 365(a).

54.     The standard governing bankruptcy court approval of a trustee's decision to assume or reject an executory contract or unexpired lease is whether the trustee's reasonable business judgment supports assumption or rejection.  See e.g., In re Stable Mews Assoc., Inc., 41 B.R. 594, 596 (Bankr. S.D.N.Y. 1984).  If the trustee's business judgment has been reasonably exercised, a court should approve the assumption or rejection of an unexpired lease or executory contract. See In v: BankVest Capital Corp., 360 F.3d 291, 301 (1st Cir. 2004), quoting In v. BankVest Capital Corp., 290 B.A. 443, 448 (1st Cir. B.A.P. 2003) See also, Group of Institutional Investors v. Chicago M. St. P. & P.R.R. Co., 318 U.S. 523 (1943); Sharon Steel Corp., 872 F.2d 36, 39-40 (3d Cir. 1989).  The business judgment test "requires only that the trustee demonstrate that [assumption or] rejection of the contract will benefit the estate." Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co. (In re Wheeling-Pittsburgh Steel Corp.), 72 B.R. 845, 846 (Bankr. W.D. PD 1987) (quoting Stable Mews Assoc., 41 B.R. at 596).  Any more exacting scrutiny would slow the administration of a debtor's estate and increase costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially.  See Richmond Leasing Co. v. Capital Bank. N.A., 762 F.2d 1303, 1311 (5th Cir. 1985).

55.     Two conditions are imposed upon a trustee's ability to assume and assign an executory contract.  First, in order to assume an agreement, pursuant to section 365(b)(1) of the Bankruptcy Code, a trustee must "cure, or provide adequate assurance that the trustee will promptly cure," any default, including compensation for any "actual pecuniary

loss" relating to such default.  11 U.S.C. § 365(b)(1).

56.    Once an executory contract is assumed, the trustee may elect to assign such contract. See In re Rickel Home Centers, Inc., 209 F.3d 291, 299 (3d Cir. 2000) ("[t]he code generally favors free assignability as a means to maximize the value of the Debtor's estate"); see also In Re Headquarters Dodge, Inc., 13 F.3d 674, 682 (3d Cir. 1994) (noting purpose of section 365(f) is to assist trustee in realizing the full value of the Debtor's assets).

57.    Pursuant to Section 365(a) of the Bankruptcy Code, assignment is conditioned on "adequate assurance of future performance [being] provided." 11 U.S.C. § 365(0(2). The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." See Carlisle Homes. Inc.  v. Arrari (In re Carlisle Homes, Inc.), 103 B.R. 524, 538 (Bankr. D.N.J. 1989); see also In re  Natco Indus., Inc., 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance).  Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned.  See also In re Bygaph, Inc. 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee of lease from the debtor has financial resources and has expressed willingness to devote sufficient funding to business in order to give it strong likelihood of succeeding).

58.    Here, the Proposed Purchaser and any other entity selected as the Final Bidder will be able to demonstrate at the Sale Hearing its financial ability to perform under any assigned contract.

59.    Finally, the mechanism for establishing the amount of the cure obligations

is reasonable and appropriate.  The requirement of notice of a proposed assumption and

assignment and cure discussed above of 20 days prior to the Sale Hearing comports with

Rule 2002(a) of the Federal Rules of Bankruptcy Procedure.

60.    Section 105(a) of the Bankruptcy Code provides a Bankruptcy Court with

broad powers in the administration of a case under chapter 7.  Section 105(a) provides that

"[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry

out the provisions of [chapter 7]."  11 U.S.C. § 105(a).  Provided that a Bankruptcy Court

does not employ its equitable powers to achieve a result not contemplated by the Bankruptcy

Code, the exercise of its section 105(a) power is proper.  See In re Fesco Plastics Corp., 996

F.2d 152, 154 (7th Cir. 1993); Pincus v. Graduate Loan Ctr. (In re Pincus), 280 B.R. 303, 312

(Bankr. S.D.N.Y. 2002).  Pursuant to section 105(a), a Court may fashion an order or decree that

helps preserve or protect the value of a debtor's assets.  See e.g., In re Chinichian, 784 F.2d

1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion

orders as necessary pursuant to the purposes of the Bankruptcy Code"); In re Cooper Props.

Liquidating Trust, Inc., 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that a Bankruptcy

Court is "one of equity and as such it has a duty to protect whatever equities a debtor may have

in property for the benefit of their creditors as long as that protection is implemented in a

manner consistent with the bankruptcy laws").

61.    The Trustee respectfully submits that the proposed Cure Procedures for the

identification and payment of Cure Amounts are appropriate and reasonably tailored to

provide non-Debtor counter-parties to potential Assumed and Assigned Contracts with

adequate notice of the proposed assumption and assignment of their applicable contract, as well

as the proposed Cure Amounts related thereto, if any.  Such non-Debtor parties to the

potential Assumed and Assigned Contracts will then be given an opportunity to object to such

notice. The Cure Procedures further provide that, in the event an objection is not resolved, this

Court will determine related disputed issues, including any adequate assurance of future

performance issues. Accordingly, the Trustee submits that implementation of the proposed Cure

Procedures is appropriate in these cases.

**C.    The Proposed Sale of Assets Is a Proper Exercise of the Trustee's Reasonable Business Judgment**

62.    At the conclusion of the Sale Hearing, the Trustee will also request that the

Court approve the sale of the Acquired Assets to the Final Bidder(s). The Trustee submits

that the sale to such bidder is in the best interest of the Debtor's estate and its creditors.

63.    Section 363(b)(1) of the Bankruptcy Code provides that "the trustee, after notice

and a hearing, may use, sell or lease, other than in the ordinary course of business, property of

the estate. 11 U.S.C. § 363(b)(1). Courts interpret section 363 to require only that such sale or

use of property be within the sound judgment of the trustee to which the Court gives great

deference. See e.g., In re Decora Indus., Inc., 2002 WL 32332749, *2 (D.Del. 2002).

64.    Thus, if a trustee's actions satisfy the business judgment rule, then the transaction

in question should be approved under section 363(b)(1). When applying the 'business judgment'

standard, courts show great deference to a trustee's business decisions. See In re Trans World

Airlines., 2001 Bankr. LEXIS 267 at *45-50 (Bankr. D. Del. 2001) (describing business

judgment rule as "very deferential standard").

**D.    The Sale of Assets Free and Clear of Liens, Claims, and Interests Is Authorized Under Bankruptcy Code Section 363(f)**

65.    The Trustee respectfully submits that it is appropriate to sell the Acquired

Assets free and clear of all interests, pursuant to section 363(f) of the Bankruptcy Code, with all

such interests attaching to the net sale proceeds of the Acquired Assets to the extent

applicable.  Section 363(f) of the Bankruptcy Code authorizes a Trustee to sell assets free and

clear of liens, claims, interests and encumbrances if:

    a.      applicable nonbankruptcy law permits sale of such property free and
clear of such interests;

    b.      such entity consents;

    c.      such interest is a lien and the price at which such property is to be sold
is greater than the value of all liens on such property;

    d.      such interest is in bona fide dispute; or

    e.      such entity could be compelled, in a legal or equitable proceeding, to
accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  This provision is supplemented by section 105(a) of the Bankruptcy

Code, which provides that "[t]he Court may issue any order, process or judgment that is

necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. §

105(a).

      55.      Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive,

satisfaction of any one of its five requirements will suffice to permit the sale of the Acquired

Assets free and clear of the interests.  See In re Dundee Equity Corp., 1992 Bankr. LEXIS 436, *12

(Bankr. S.D.N.Y. 1992) ("Section 363(f) is in the disjunctive, such that the sale free of interest

concerned may occur if any one of the conditions of § 363(f) have been met"); In re Wolverine

Radio Co., 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that Bankruptcy Code section 363(f)

is written in the disjunctive; holding that the court may approve the sale 'free and clear'

provided at least one of the subsections of section 363(f) is met).

      56.      The Trustee believes that one or more of the tests under section 363(f) will

be satisfied with respect to the transfer of the Assets pursuant to a Sale Order.  In particular,

the lenders, Silicon Valley Bank and GE Business Financial Services Inc., f/k/a Merrill Lynch

Business Financial Services Inc., have an interest in the Assets, and the Trustee believes that they

will consent to the proposed sale, therefore, section 363(f)(2) will be satisfied.

**E.      The Proposed Transaction Is In Good Faith**

"[W]hen a bankruptcy court authorizes a sale of assets pursuant to section 363(b)(1) of the

Bankruptcy Code, it is required to make a finding with respect to the 'good faith' of the

purchaser." In re Abbotts Dairies, 788 F.2d 143, 149-50 (3rd Cir. 1986).  The purpose of such a

finding is to facilitate the operation of section 363(m) of the Bankruptcy Code, which provides a safe

harbor for a purchaser of a debtor's property when the purchase is made in "good faith."

Specifically, section 363(m) provides:

> The reversal or modification on appeal of an authorization under
> subsection (b) or(c) of this section of a sale or lease of property
> does not affect the validity of the sale or lease under such
> authorization to an entity that purchased or leased such property in
> good faith, whether or not such entity knew of the pendency of the
> appeal unless such authorization and such sale of lease were stayed
> pending appeal.

11 U.S.C. § 363(m); see Ewell v. Diebert (In re Well), 958 F.2d 276, 280 (9th Cir. 1992).

This provision serves the important purposes both of encouraging good faith transactions

and of preserving the finality of the bankruptcy court's orders unless stayed pending appeal.

Abbotts Dairies, 788 F.2d at 147.  As the Seventh Circuit recognized in In re Edwards, 962 F.2d

641 (7th Cir. 1992), "if purchasers at judicially approved sales of property of a bankruptcy estate, and

their lenders, cannot rely on the deed that they receive at the sale, it will be difficult to

liquidate bankruptcy estates at positive prices." Id. at 643.  The court also noted that although the

law balances the competing interests between lien holders and purchasers of assets of the estate, it

weighs such interests "heavily in favor of the bona fide purchaser," particularly where, as here,

there are substantial business justifications for the proposed transaction. Id.

In this case, it is clear that a buyer is entitled to the safe harbor provided by section

363(m) of the Bankruptcy Code.  Indeed, the Bidding Procedures and the APA demonstrate

{K0402846.1}

that the negotiations between the Proposed Purchaser and the Trustee at all times have been conducted at arms' length and in good faith. In connection with the proposed sale of the Assets to the Proposed Purchaser, the Trustee has evaluated the alternatives and acted with the intent of obtaining the best possible deal for the estates in terms of maximizing value. The terms of the proposed sale of the Assets to the Proposed Purchaser accomplish this appropriate objective. Moreover, the Proposed Purchaser is not an insider of the Debtor. For these reasons, the Trustee requests that the Court make a factual determination that the Proposed Purchaser, or a Final Bidder(s) at the Sale Hearing, has purchased the Assets in good faith as defined in section 363(m) of the Bankruptcy Code.

## IX.    MISCELLANEOUS

### A.    No Prior Request

No previous motion for the relief requested herein has been made to this or any other court.

### B.    Stay Provision

The Trustee requests that the Court waive the ten (10) day stay provisions of Federal Rule of Bankruptcy Procedure 6004(g).

## X.    RELIEF REQUESTED

WHEREFORE, the Trustee respectfully requests that the Court enter an order:

    (i)       Approving the Bidding Procedures set forth in the Motion;

    (ii)      Approving the payment of the Expense Reimbursement fee to the extent the Proposed Purchaser is not the Final Bidder(s) at the Auction;

    (iii)     Scheduling an auction and Sale Hearing to approve the transaction and approving the form and manner of notice (Sale Notice) thereof;

    (iv)     Approving the Cure Procedures for the assumption and assignment of executory contracts;

AND at the conclusion of the Sale Hearing, entry of an order:

    (v)    Authorizing the sale of substantially all of the Debtor's assets to the Final Bidder(s);

    (vi)    Authorizing the assumption and assignment of certain executory contracts;

    (vii)    Finding that the Proposed Purchaser or the Final Bidder(s) is a good faith purchaser and engaged in arms-length negotiations with the Trustee;

    (viii)    Waiving the stay provisions of Federal Rule of Bankruptcy Procedure 6004(g); and

    (ix)    Granting the Trustee and the Final Bidder(s) such other and further relief as the Court may deem just and proper.

**WARREN E. AGIN, CHAPTER 7 TRUSTEE OF INNOVATIVE SPINAL TECHNOLOGIES, INC.**

By his attorney,

ECKERT SEAMANS CHERIN & MELLOTT, LLC

By: /s/ John G. Loughnane
       John G. Loughnane (BBO No. 557599)
       One International Place, 18th Floor
       Boston, MA  02110
       Telephone:  (617) 342-6885
       Facsimile:    (617) 342-6899

Dated: July 27, 2009

## EXHIBITS

- **EXHIBIT A -** Asset Purchase Agreement

- **EXHIBIT B -** Bidding Procedures

- **EXHIBIT C –** Sale Notice

- **EXHIBIT D -** Cure Notice