IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: | Chapter 7 |
| INNOVATIVE SPINAL TECHNOLOGIES, INC., | Case No. 09-14415 (FJB) |
| Debtor. | |

**ORDER AUTHORIZING (A) SALE OF ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS, (B) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND (C) RELATED RELIEF**

On July 27, 2009, Warren E. Agin, the duly-appointed chapter 7 trustee (the "Trustee") of Innovative Spinal Technologies, Inc. (the "Debtor"), by his counsel, filed in the Bankruptcy Court the *Motion for (I) An Order (A) Approving Bidding Procedures in Connection with Sale of Substantially All Of the Debtor's Assets, (B) Approving the Expense Reimbursement, (C) Scheduling an Auction and Hearing to Approve the Sale And Approving The Form And Manner Of Notice Thereof, And (D) Establishing Procedures Relating to the Assumption and Assignment of Executory Contracts; and (II) An Order (A) Approving the Proposed Sale, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts, and (C) Granting Certain Related Relief (the "Motion")*[1].

Upon review of Trustee's Motion requesting, inter-alia, authority to sell all the Debtor's assets, and the Court having previously approved on August 3, 2009 (i) the bidding procedures in connection with the sale of the Acquired Assets, (ii) the Expense Reimbursement for Integra LifeSciences Corporation, (iii) the Sale Notice, (iv) the Cure Procedures set forth in the Motion, and (v) the procedures for assumption and assignment of certain executory contracts (the

---

[1] Unless otherwise defined herein, capitalized terms shall have the meaning ascribed to them in the Motion.

{K0403856.3}
DM3\1119393.4

1

"Bidding Procedures Order"), and after completion of the auction that took place at Eckert Seamans Cherin & Mellott, Two International Place, 16th Floor, Boston, Massachusetts, on August 24, 2009 (the "Auction") and a hearing having been held on August 26, 2009 in connection with the Motion (the "Sale Hearing") and all objections by Frank Boehm, Jr., Benedetta Melnick, and Creative Neuroscience Applications, LLC (collectively "CNA"), (b) Millstone Medical Outsourcing, Inc. ("Millstone"), (c) X-Spine Systems, Inc. ("X-Spine"), and (d) Roger P. Jackson, M.D., Midwest Spine Foundation, and SMS Trust (collectively the "Jackson Group")(collectively CNA, Millstone, X-Spine, and the Jackson Group are referred to as the "Objectors") having been filed, responded to and heard; and all parties in interest having been heard or having had the opportunity to be heard, regarding the sale of the Acquired Assets; and the Court having considered (a) the Motion, (b) the objections filed by the Objectors, and (c) the arguments of counsel made and evidence proffered or adduced in support of approval of the sale of the Acquired Assets at the Sale Hearing; and it appearing that due and sufficient notice of the Motion and the relief granted by this Order have been provided; and this Court being satisfied that the relief requested in the Motion is in the best interests of the Debtor's Estate, the Debtor and its creditors; and this Court having considered all of the pleadings, memoranda, evidence and the entire record submitted in connection with the Motion and the sale of the Acquired Assets; and after due deliberation and good cause appearing therefore;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

    A.    The Court has jurisdiction to grant the relief requested in the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the Motion constitutes a core proceeding within the meaning of 28 U.S.C. § 157(b).

    B.    Venue of this case in this District is proper, pursuant to 28 U.S.C. §§ 1408 and 1409.

C. The statutory predicates for the relief requested herein include sections 105(a), 363 and 365 of the Bankruptcy Code, Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), and MLBR 6004-1 and 6006-1.

D. The findings and conclusions set forth in this order (the "Order") constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

E. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

F. At the Auction, Integra LifeSciences Corporation (the "Final Bidder" or the "Buyer") provided the highest offer for the Acquired Assets by submitting its "Sealed All Asset Auction Bid Form" to the Trustee, which modified and was made subject to the terms and conditions of its Asset Purchase Agreement dated July 27, 2009. Copies of the Final Bidder's Sealed All Asset Auction Bid Form and the Asset Purchase Agreement dated July 27, 2009 (collectively, the "Integra APA") are attached hereto as Exhibit A.

G. At the Auction, Biomet, Inc. (the "Back-Up Bidder"), provided the second highest bid for the Acquired Assets by submitting its "Sealed All Asset Auction Bid Form" to the Trustee together with modifications to its Asset Purchase Agreement previously submitted to the Trustee on August 14, 2009. Copies of the Back-Up Bidder's Sealed All Asset Auction Bid Form and the modified Asset Purchase Agreement (collectively, the "Biomet APA") are attached hereto as Exhibit B.

H.      The Buyer[2] (i) has full power and authority to execute the APA[3] and all other documents contemplated in the APA, and the sale of the Acquired Assets by the Buyer has been duly and validly authorized; (ii) has all power and authority to consummate the transactions contemplated by the APA; and (iii) has taken all action necessary to authorize and approve the APA and the consummation of the transactions contemplated by the APA. No consents or approvals, other than those expressly provided in the APA, are required for the Buyer to consummate the transactions.

I.      Due and adequate notice was provided of the Motion, the Sale Hearing, and the right to submit bids for the Debtor's assets in response to the offer contained in the APA. Service and notice of the Motion, the Sale Hearing and the right to submit bids complied with § 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9006. No other or further notice is required. The notice provided is appropriate under the circumstances and was reasonably calculated to provide actual notice of the APA, Motion and Sale Hearing to all parties in interest.

J.      A reasonable opportunity has been afforded to any interested party to make a higher or otherwise better offer to purchase the Acquired Assets and to assert an objection to or be heard regarding the relief requested in the Motion, including approval of the APA.

K.      The Trustee has marketed the Acquired Assets and conducted the sale process in compliance with, and has complied with all of his obligations under, the Bidding Procedures Order. The Trustee has properly exercised his reasonable business judgment in determining to

---

[2] Any and all references to the term "Buyer" in this Order apply solely to the Final Bidder. In the event the Final Bidder does not consummate the transactions contemplated by the Integra APA, then any and all references to the term "Buyer" in this Order shall automatically apply to the Back-Up Bidder.

[3] So long as the Final Bidder is the Buyer, then, any and all references to the "APA" refers to the Integra APA. In the event the Back-Up Bidder becomes the "Buyer," under the terms of this Order and the Bidding Procedures Order, then any and all references to the "APA" shall refer to the Biomet APA.

{K0403856.3}                                    4
DM3\1119393.4

sell substantially all of the Debtor's assets and in determining that the Buyer's offer represents the highest and best offer for the Acquired Assets.

L. The approval of the Motion and the APA is in the best interests of the Debtor's estate, the Debtor's creditors and other parties in interest in that:

a. The APA was negotiated, proposed and entered into in good faith, from arm's-length bargaining positions by the Trustee and the Buyer;

b. The Trustee had the opportunity to contract with any other party interested in purchasing the Acquired Assets to be sold pursuant to the terms similar to the approved APA;

c. The Bidding Procedures approved in connection with the sale of the Acquired Assets enabled the Trustee to solicit higher and better offers for the Acquired Assets, and provided for adequate notice and an opportunity to be heard in connection with the sale of the Acquired Assets;

d. The Buyer is a third-party purchaser unrelated to the Trustee or the Debtor, and is not a continuation of the Debtor's corporation; and

e. The purchase price is fair and reasonably equivalent value for the purchase of the Acquired Assets.

f. The purchase and sale transaction contemplated in the APA and approved in this Order ("Sale Order" or "Order"):

(i) does not constitute a merger of consolidation of the Debtor, it's estate, the Buyer, or any of them;

(ii) are not fraudulent or collusive attempts by any entity to avoid the Debtor's liabilities or the claims against the Debtor's estate; and

(iii) do not result in the total or virtual extinguishment of tort remedies against the Debtor and its bankruptcy estate.

g. The Buyer is not a mere extension of the Debtor, its estate, the Trustee or any of them.

M. The Sale of the Acquired Assets and other transactions contemplated by the APA are being approved and consummated promptly in order to preserve the value of the Acquired

Assets.

N.   The Buyer is a good faith purchaser of the Acquired Assets under section 363(m) of the Bankruptcy Code and, as such, is entitled to the protections afforded thereby. The Buyer and the Debtor have not engaged in any conduct that would cause or permit the APA and the transactions contemplated thereby to be avoided under section 363(n) of the Bankruptcy Code.

O.   The Buyer would not have entered into the APA and would not consummate the transactions contemplated in the APA if: (a) the sale of the Acquired Assets were not free and clear of all claims, liens, encumbrances and interests, other than the Assumed Liabilities, and (b) the Buyer would be liable for any of the liens claims, encumbrances or interests.

P.   The APA contemplates that, except for the Assumed Liabilities, consummation of the sale does not subject the Buyer to any debts, liabilities, commitments, responsibilities, or claims of any kind against the Trustee or the Debtor's estate, whether known or unknown, contingent or otherwise, whether existing as of the date of this order or arising thereafter.

Q.   The Trustee may sell the Acquired Assets free and clear of all liens, claims, encumbrances and interests, other than the Assumed Liabilities because, in each instance, one or more of the standards set forth in subsections (1) through (5) of section 363(f) of the Bankruptcy Code has been satisfied. Those holders of liens, claims, encumbrances and interests, other than the Assumed Liabilities, who did not object, or who withdrew their objections, to the sale or the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

R.   All other findings made by the Court during the Sale Hearing are incorporated herein by reference.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.   The Motion, in its entirety, is granted. All parties-in-interest have had the

opportunity to object to the relief requested in the Motion. To the extent that objections to the Motion or the relief requested in the Motion have not been withdrawn, waived or settled, such objections are overruled on their merits. The parties who did not object, or who withdrew their objections to any and all relief sought by the Motion, are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

2. The APA negotiated with the Buyer is hereby approved. Pursuant to section 363(b) of the Bankruptcy Code, the Trustee is hereby authorized to: (a) sell the Acquired Assets to the Buyer on the terms and subject to the conditions set forth in the APA, (b) execute any and all additional conveyances, assignments, agreements, instruments, amendments, schedules and other documents, and (c) do all other things and take all further actions as may be necessary or appropriate for the purpose of performing its obligations under the APA. The Acquired Assets shall not include any asset, tangible or intangible, set forth as Excluded Assets on Schedule 1.8 of the APA.

3. The Trustee is hereby authorized to assume the executory contracts set forth in that certain Notice of Final Bidder, Back-Up Bidder, And Final List of Contracts To Be Assumed And Assigned (collectively the "Assigned Agreements") filed on August 24, 2009, and to assign the Assigned Agreements to the Buyer.[4] The cure amounts are hereby fixed as follows as the amounts required to be paid in order to comply with the Trustee's obligations under Section 365(b) of the Bankruptcy Code:

---

[4] In the event the Back-Up Bidder becomes the Buyer, such contracts will not be assumed and assigned to the Back-Up Bidder as the Biomet APA does not require the assignment of such contracts. The Biomet APA does require the Trustee to assign (i) all prepetition non disclosure agreements signed by the Debtor and (ii) all employee agreements identified in certain due diligence materials made available by the Trustee to the bidders. In the event the Trustee seeks to close a transaction with the Back-Up Bidder, the Trustee shall take such steps as required to obtain authority to assign such contracts. The bid submitted by the Back-Up Bidder provides that the Trustee would use best efforts to assign such agreements, but that such assignment would not be a condition to closing.

{K0403856.3}                                7
DM3\1119393.4

| **CONTRACT PARTY** | **CURE AMOUNT** |
|---|---|
| Jackson Group | $20,000 |
| Alpinespine, LLC | $0 |

Upon the payment of such cure amounts, if any, the Trustee's and/or the Buyer's obligations under Section 365(b) of the Bankruptcy Code shall be fully satisfied.

4. The objection filed by the Jackson Group has been resolved by the agreement of the parties to pay the Jackson Group $20,000 in cure costs in connection with the assumption and assignment of the Jackson License. Millstone has withdrawn its objection. The objections of X-Spine and CNA are moot as none of the contracts of such parties will be assumed and assigned to the Buyer, and are hereby OVERRULED.

5. The Acquired Assets shall be sold pursuant to section 363 of the Bankruptcy Code free and clear of all liens, claims, encumbrances and interests ("Liens") other than the Assumed Liabilities. The Liens against the Acquired Assets shall attach to the Cash Consideration in the same order, priority, and with the same validity, force, and effect that such Liens had prior to the Sale, subject to any claims and defenses of the Estates and the Trustee with respect thereto. This Order is and shall be effective as a determination that, on the Closing, all liens, claims, encumbrances and interests existing on the Acquired Assets prior to the Closing have been unconditionally released from the Acquired Assets.

6. In accordance with that certain Stipulation and Order Concerning Use of Cash Collateral and Adequate Protection and Agreement for Liquidation of Certain Assets and Distribution of Sale Proceeds (the "Cash Collateral Order"), upon the Closing Date, the Trustee is authorized to pay to Silicon Valley Bank, as Agent for itself and GE Business Financial

Services, Inc., f/k/a Merrill Lynch Business Financial Services, Inc., pursuant to the Cash Collateral Order, the Cash Consideration net of amounts due to the estate in accordance with the Cash Collateral Order.

7. The transfer of the Acquired Assets (a) shall constitute legal, valid, and effective transfers of property of the Debtor's estate to the Buyer, and (b) shall vest in the Buyer the Debtor's right, title, and interest in the Acquired Assets free and clear of all liens, claims, encumbrances and interests other than those relating to the Assumed Liabilities. The Debtor's estate is authorized to transfer, to the fullest extent permitted by law, all governmental permits and licenses currently issued to the Debtor, to the Buyer, including, but not limited to any and all patents, patent applications, trade secrets, technology, know-how, inventions, processes, technical information and data, tools and dies, designs, plans, drawings, diagrams, schematics and other proprietary information and intellectual property relating to or used in connection with the Combined Business (as defined in the APA) or any part thereof, wherever located, including, without limitation, that certain patent and patent application formerly owned by Frank H. Boehm, Jr. and Benedetta D. Melnick and assigned by them to Debtor, which was filed on December 17, 2002 and which bears application serial number 10/320,989, which is now issued as U.S. Patent No. 7,306,603, together with all its continuations, continuations-in-part, divisionals, substitutes, related provisionals and related non-provisional applications, including any and all foreign counterparts to all of the foregoing and any and all extensions thereof, and including any and all reissues and reexaminations of all of the foregoing; ("Boehm/Melnick Patent"), which shall be transferred to Buyer by the Debtor free and clear of, inter alia, any and all claims of ownership to such patent, or rights to acquire ownership of such patent, by Frank Boehm, Jr., Benedetta Melnick, Creative NeuroScience Applications LLC, including as asserted

by any of them in civil action number 6:09-cv-00131-DNH-GHL, <u>Boehm, et. al v. Innovative Spinal Technologies Corporation, et. al</u>, in the United States District Court for the Northern District of New York ("<u>Boehm/Melnick Litigation</u>"), the Bankruptcy Case or otherwise. From and after the closing of the contemplated purchase and sale transaction, Buyer's right to practice all of Debtor's intellectual property, including, without limitation, the Boehm Melnick Patent, shall be free from interference or claims of any kind by any entity.

8. The sale of the Acquired Assets to the Buyer pursuant to the APA shall constitute transfers for reasonably equivalent value and fair consideration under the Bankruptcy Code and the laws of the United States.

9. Upon consummation of the transactions contemplated by the APA, the Trustee and the Buyer shall be entitled to the protections provided under section 363(m) of the Bankruptcy Code.

10. The consideration provided by the Buyer for the Acquired Assets under the APA is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

11. Except for the Assumed Liabilities and as expressly set forth in the APA, all persons and entities holding liens, claims encumbrances or interests against the Trustee, the Debtor, the Debtor's estate or in the Acquired Assets of any kind and nature whatsoever, hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing such liens, claims, encumbrances and interests against the Buyer, its successors or assigns, its properties, or the Acquired Assets with respect to any lien, claim, encumbrances or interest of any kind or nature whatsoever such person or entity had, has, or may have against or in the Debtor or the Acquired Assets. Following the Closing, no holder of a lien, claim encumbrance or interest against the Trustee, the Debtor, the Debtor's estate or in the Acquired

Assets shall interfere with Buyer's title to or Buyer's use and enjoyment of the Acquired Assets based on or related to such lien, claim, encumbrance or interest.

12. Except as expressly set forth in the APA or this Order, after the Closing, the Trustee, the Debtor and the Debtor's estate shall have no further liabilities or obligations with respect to any Assumed Liabilities and all holders of such Claims arising therefrom are forever barred and estopped from asserting such Claims against the Trustee, the Debtor, the Debtor's estate, its successors or assigns, its property, or its assets.

13. Except for the Assumed Liabilities and as expressly set forth in the APA, the Buyer is not assuming nor shall it in any way whatsoever be liable or responsible, as a successor or otherwise, for any debts, liabilities, obligations, commitments or responsibilities of the Trustee, the Debtor or any of its predecessors, affiliates, shareholders, directors, officers, or employees or for any claims, debts, liabilities, obligations, commitments, responsibilities, liens, encumbrances or interests in any way whatsoever relating to or arising from the Acquired Assets, or the Debtor's operations or use or ownership of the Acquired Assets, arising prior to consummation or the transactions contemplated by the APA. The Buyer shall not have any successor or vicarious liabilities of any kind or character whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtor or any debts or claims against or obligations of the Debtor arising prior to the Closing.

14. This Order shall be binding upon and govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal state and local officials, and all other persons and entities who may be required by

{K0403856.3}                                   11
DM3\1119393.4

operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Acquired Assets. At or prior to the Closing of the sale of the Acquired Assets, each person holding a lien, claim encumbrance or interest against or in the Acquired Assets is authorized and directed to execute such documents and take all other actions as may be necessary or appropriate to release its lien, claim, encumbrance or interest against the Acquired Assets, other than those relating to Assumed Liabilities, as such liens, claims, encumbrances or interests may have been recorded or may otherwise exist. The recordation of this Sale Order shall operate for all purposes with the same force and effect as a termination statement under the Uniform Commercial Code to discharge and terminate all liens and security interests in and to the Acquired Assets.

15. All entities that are presently, or on the Closing may be, in possession of some or all of the Acquired Assets are hereby directed to surrender possession of said Acquired Assets to the Buyer at the Closing, or as otherwise directed by Buyer, without further notice, demand or Court Order.

16. This Order shall be effective and enforceable immediately upon entry, shall not be subject to any stay of enforcement, including any stay provided by Bankruptcy Rules 6004 and 6006. The provisions of this Order shall be self-executing.

17. The APA and any related agreements, documents or instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms of such documents without further order of the Court, provided that any such modifications, amendments or supplements are neither material nor adverse to the Trustee, the Debtor or the Debtor's estate.

18. This Court shall retain exclusive jurisdiction (a) to interpret and enforce the

provisions of this Order (b) to interpret and enforce the APA, any amendments, waivers and consents to or under the APA, and each of the agreements executed in connection with the APA, (c) to compel delivery of the Acquired Assets to the Buyer, (d) to protect the Buyer against any liens in the Acquired Assets, (e) to compel delivery of the Purchase Price, (f) to interpret, implement and enforce the provisions of this Order and (g) to hear and determine any and all disputes between the Trustee, the Debtor, the Debtor's estate and/or Buyer arising out of or relating to this Order and the APA; provided, however, that in the event the Court abstains from exercising or declines to exercise such jurisdiction or is without jurisdiction with respect to the APA or this Order, such abstention, refusal, or lack of jurisdiction shall have no effect upon, and shall not control, prohibit, or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

19. The provisions of this Order are nonseverable and mutually dependent.

20. The terms and provisions of the APA and this Order shall be binding on and inure to the benefit of the Buyer, the Trustee, the Debtor, the Debtor's estate and creditors and their respective affiliates, successors, assigns, shareholders, directors, officers and employees and shall be binding upon any affiliate third party and all persons asserting a lien, claim, encumbrance or interest in the Debtor's estate or any of the Acquired Assets.

21. Each and every federal, state and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA and this Order.

22. The failure specifically to include any particular provisions of the APA in this Order shall not diminish or impair the efficacy of such provisions, it being the intent of the Court that the APA be approved in its entirety.

August 26, 2009

_____
UNITED STATES BANKRUPTCY JUDGE